UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

TOUA HONG CHANG,	CIVIL NO. 06-1590 (PAM/JSM)

    Petitioner,

v.	<u>REPORT AND RECOMMENDATION</u>

STATE OF MINNESOTA,

    Respondent.

    JANIE S. MAYERON, U.S. Magistrate Judge

    This matter is before the undersigned United States Magistrate Judge on Petitioner's application for habeas corpus relief under 28 U.S.C. § 2254 [Docket No. 1], and upon Petitioner's Motion to Disregard Respondent's Response to Petitioner's Habeas Corpus Reply [Docket No. 15].  Respondent has filed an Answer to Petition for Writ of Habeas Corpus [Docket No. 6] and a Response to Petitioner's Habeas Corpus Reply [Docket No. 12].  Petitioner has filed a Habeas Corpus Reply [Docket No. 11] and a Supplemental Reply in Light of Extension Motion [Docket No. 15].  This matter was decided on the submissions of the parties.

    This matter has been referred to this Court for a Report and Recommendation pursuant 28 U.S.C. § 636 (b)(1)(B) and Local Rule 72.1(c).

    The Petitioner appears <u>pro se</u>.  Respondent appears by Jeanne L. Schleh, Assistant Ramsey County Attorney.

    For the reasons discussed below, it is recommended that Petitioner's Motion to Disregard Respondent's Response to Petitioner's Habeas Corpus Reply [Docket No.

1

15] be denied as moot, and the petition for writ of habeas corpus [Docket No. 1] be denied and dismissed with prejudice.

**I.    MOTION TO DISREGARD RESPONDENT'S RESPONSE TO PETITIONER'S HABEAS CORPUS REPLY**

After Petitioner filed his reply to Respondent's Answer, Respondent filed a Response to the Reply [Docket No. 12]. Petitioner then asked the Court to disregard the Response, arguing that it was submitted contrary to this Court's Order dated April 27, 2006, which stated that after Petitioner filed a reply to the answer, no further submissions from either party would be permitted, except as expressly authorized by Court order. Petitioner further requested that he be able to prepare and submit a reply to Respondent's Response to his Reply. While it is true that Respondent filed its Response without permission of this Court, it is also true that Petitioner filed a Supplemental Reply [Docket No. 15] on July 19, 2006, without authorization by this Court. As the Court has considered all the filings of both parties in making its recommendation to the District Court, the Court denies as moot Petitioner's motion to disregard the Response filed by Respondent.

**II.   PETITION FOR WRIT OF HABEAS CORPUS**

   **A.    Background**

On May 28, 2003, Petitioner was found guilty by a Ramsey County jury of promoting prostitution of an individual under the age of 18, in violation of Minn. Stat. §609.322, subd. 1, a crime committed for the benefit of a gang in violation of Minn. Stat. §609.229, subd. 2, and two counts of first-degree criminal sexual conduct in violation of Minn. Stat. §609.342, subds. 1(c),1(f)(i). Petitioner was sentenced to a prison term of 98 months plus five years of conditional release for the conviction of crime committed

for the benefit of a gang, and to a consecutive 144-month prison term plus ten years of conditional release for first-degree criminal sexual conduct.

Following his trial and conviction, Petitioner appealed to the Minnesota Court of Appeals, arguing: 1) the uncorroborated testimony of a witness was insufficient to support his conviction where other witnesses contradicted the witness's version of events; 2) the admission of an out-of-court statement as substantive evidence deprived him of his Sixth Amendment right to confrontation; and 3) the imposition of the conditional release terms was unauthorized. The Court of Appeals affirmed the convictions, but reversed the 5-month conditional release period that was imposed pursuant to Petitioner's conviction for commission of a crime for the benefit of a gang, and vacated and remanded the 10-year conditional release period that was imposed for Petitioner's conviction for first-degree criminal sexual conduct so that it could be imposed as a 5-year conditional release term. State v. Chang, 2005 WL 353987 (Minn.App. 2005). Petitioner sought review of the Court of Appeals decision, which was denied by the Minnesota Supreme Court on April 27, 2005.

On April 26, 2006, Petitioner filed his Petition for Habeas Corpus Relief in this Court. Petitioner's sole ground for relief was that he was denied his Sixth Amendment right to confrontation when the Court admitted a non-testifying witness's statement that had been given to the police. Petition, ¶ 12A. In particular, Petitioner alleged that the admission of a non-testifying witness's statement to the police was used as substantive evidence to corroborate the testimony of the alleged victims of Petitioner's actions, in violation of his constitutional right to confrontation. Id.

3

In response to Petitioner's application for a writ of habeas corpus, Respondent argued that Petitioner is in essence claiming that the decision of the United States Supreme Court in Crawford v. Washington, 541 U.S. 36 (2004), was applicable to his case, making admission of the testimony unconstitutional. Respondent contended that Crawford does not assist Petitioner under the facts of his case and asks that the Court deny the Petition. Respondent acknowledged that Petitioner has exhausted his state court remedies prior to filing the instant Petition. Answer, ¶ II.

**B.  Discussion**

1.  Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs a federal court's review of habeas corpus petitions filed by state prisoners. Section 2254 of the AEDPA provides that a district court will entertain a petition for writ of habeas corpus submitted by a person in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

In addition, 28 U.S.C. § 2254 provides that a habeas corpus petition:

shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;  or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Court of Appeals for the Eighth Circuit has described the review under §

4

2254(d): Under the "contrary to" clause of § 2254(d)(1), the writ may be granted if the state court arrived at a conclusion opposite to that reached by the United States Supreme Court on a question of law or decided a case differently than the Supreme Court has on a set of materially indistinguishable facts. See Copeland v. Washington, 232 F.3d 969, 973 (8th Cir. 2000) (citing Williams v. Taylor, 529 U.S. 362 (2000)). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identified the correct governing legal principle, but unreasonably applied that principle to the facts of the prisoner's case. See Copeland, 232 F.3d at 973.

Therefore, "[a] federal court may not grant a petition under 28 U.S.C. § 2254 unless the court concludes that the state court adjudication of the claim 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the [United States] Supreme Court . . . or . . . resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Lee v. Gammon, 222 F.3d 441, 442 (8th Cir. 2000) (citing 28 U.S.C. § 2254(d); Williams, 529 U.S. at 362). Under this standard, the federal court "must deny a writ – even if we disagree with the state court's decision – so long as that decision is reasonable in view of all the circumstances." May v. Iowa, 251 F.3d 713, 716 (8th Cir. 2001) (citing Williams, 529 U.S. at 409-13).

   2.   Petitioner's Sixth Amendment Claim

The Sixth Amendment provides that a criminal defendant "enjoy[s] the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. Petitioner's

5

sole claim is that he was denied his right to confrontation as guaranteed to him by the Sixth Amendment. In particular, Petitioner challenges the admission of statements made by a witness, M.H. The statements were made by M.H. to an investigating police officer, Ramsey County Sheriff Deputy Kevin Navara, during an interview. M.H. was one of four witnesses that Deputy Navara interviewed after receiving a report that several young Hmong girls may have been sexually assaulted. The other girls interviewed by Deputy Navara, X.L, T.T. and P.H., all testified at trial; M.H. did not testify as she could not be located by either party.

According to the Minnesota Court of Appeals, during Deputy Navara's interview of X.L., she told him that she had used crystal methamphetamine during the summer of 2002 with several individuals, including Petitioner and another individual named Peter. She had smoked crystal methamphetamine at Petitioner's house and at Peter's house. According to X.L., after providing the girls with the methamphetamine for free, Petitioner brought X.L., P.H., and M.H. to Peter's house and threatened them with physical harm unless they either paid for the methamphetamine or had sex with some men. On the first occasion, X.L. stated she had sex in the basement of Peter's house with two of three Hmong men who arrived in a black SUV. On another occasion, she had sex with up to five Hmong males at a location in south Minneapolis. X.L. told Deputy Navara that she had seen Petitioner with several guns, including a shotgun and handguns. Chang, 2005 WL 353987 at *1.

T.T. told Deputy Navara that Petitioner had prostituted her and P.H., X.L, and M.H. She was present at Peter's house when the black SUV showed up with the three Hmong males. The prostitution occurred in the basement of Peter's house. She was

aware of an incident when Petitioner had sexually assaulted X.L. Chang, 2005 WL 353987 at *1.

Deputy Navara also interviewed P.H., who told him that she had met the same individuals as T.T., and they provided her with free crystal methamphetamine during the summer of 2002. P.H. said that on one occasion, Petitioner and another individual named Yang, who lived with Petitioner, picked up her and one of the other girls in a maroon or red Nissan and brought them to Petitioner's garage, where they smoked methamphetamine. After instructing Yang to take the other girl outside, Petitioner removed P.H.'s pants and underwear, tied her hands behind her back with a pink jump rope, and sexually assaulted her on a mattress on the floor. P.H. said that before the sexual assault, Petitioner had loaded a black gun with bullets, and she was very afraid. P.H. identified pictures of Petitioner's house and car. Chang, 2005 WL 353987 at *1.

At Petitioner's trial, X.L., T.T. and P.H. testified to these events. Id. at *2-3; Petitioner's Brief to Minnesota Court of Appeals, pp.10-13, Petitioner's Brief to Minnesota Court of Appeals, pp. 5-8. In particular, as to the events which occurred at Peter's house, X.L. testified that about the third or fourth time she and her girlfriends, P.H. and M.H., went to Peter's house, Petitioner said that he wanted the girls to sleep with a man. However, because P.H. was sick and M.H. was menstruating, neither could have sex. Petitioner made a phone call, and approximately one hour later, three men arrived at Peter's house in a black vehicle that looked like a jeep. X.L. went into the basement and had sexual intercourse with two of the three men. Chang, 2005 WL 353987 at *2.

7

Throughout his trial, Petitioner maintained that M.H. had directed X.L., T.T. and P.H. to falsely accuse him of prostitution and criminal sexual conduct. The defense's theory of the case was that M.H. and her boyfriend, a rival gang member, had fabricated the accusations against Petitioner and had directed the other girls to falsely accuse Petitioner to get him out of the way. Chang, 2005 WL 353987 at *4. Because M.H. was unavailable during the trial, Petitioner called two witnesses to support his defense. These witnesses testified that M.H. had falsely accused Petitioner of sexual assault in order to protect her boyfriend. Specifically, the first witness testified that M.H. said that she had accused Petitioner of sexually assaulting her because she thought Petitioner was going to do something to her boyfriend. The second witness testified that she was present when M.H. told the first witness that she was purposely accusing Petitioner "for whatever it was" because she did not want anything to happen to her boyfriend. Id.; Respondent's Brief to Minnesota Court of Appeals at p.13.

In rebuttal, the state called Deputy Navara to testify as to what M.H. had told him in his interviews of her, and introduced statements made by M.H. to Deputy Navara. Deputy Navara testified that in an interview of M.H. on October 24, 2002, M.H. told him that she had been sexually assaulted but not by Petitioner. Petitioner's Brief to Minnesota Court of Appeals, p. 7 (citing TIII.150-151).[1] In addition, Deputy Navara testified that at a second interview of M.H. on November 1, 2002, M.H. corroborated what the other girls had said about Petitioner and others providing crystal methamphetamine to the girls, the prostitution incident at Peter's house involving three men and the black SUV, and the guns possessed by Petitioner and others. Chang,

---

[1] "'T___' refers to the designated volume of the four-volume trial transcript." Petitioner's Brief to Minnesota Court of Appeals, p. 6, n.1.

8

2005 WL 353987 at *4; Petitioner's Brief to Minnesota Court of Appeals, pp. 8,14; Respondent's Brief to Minnesota Court of Appeals, p.13-14 (both citing TIV.116-22). Deputy Navara further testified that M.H. denied that she had been prostituted or raped by Petitioner. Petitioner's Brief to Minnesota Court of Appeals, pp. 8,14; Respondent's Brief to Minnesota Court of Appeals, p.13-14 (both citing TIV.116-22).

On appeal, Petitioner argued that Deputy Navara's testimony regarding M.H.'s statements was substantive evidence corroborating the testimony of X.L. and P.H. that they had been sexually assaulted and prostituted by Petitioner, and violated his Sixth Amendment right to confront witnesses. The Minnesota Court of Appeals determined that M.H.'s statement, as testified to by Deputy Navara, was admissible under Rule 806 of the Minnesota Rules of Evidence to impeach statements by M.H. that were already in evidence. Chang, 2005 WL 353987 at *6. The appellate court reasoned that since other hearsay statements that M.H. made to Petitioner's witnesses were already admitted in evidence, M.H.'s out-of-court statement to Deputy Navara was admissible under Minn.R.Evid. 806 to impeach M.H.'s credibility in making the statements that were in evidence. Id.

Rule 806 of the Minnesota Rules of Evidence is identical to Rule 806 of the Federal Rules of Evidence and states that:

> When a hearsay statement, or a statement defined in Rule 801(d)(2)(C), (D), or (E), has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked may be supported, by any evidence which would be admissible for those purposes if declarant had testified as a witness. Evidence of a statement or conduct by the declarant at any time, inconsistent with the declarant's hearsay statement, is not subject to any requirement that the declarant may have been afforded an opportunity to deny or explain. If the party against whom a hearsay statement has been admitted calls the declarant as a witness, the party is entitled to

9

>examine the declarant on the statement as if under cross-examination.

As a preliminary matter, this Court finds as did the Minnesota Court of Appeals, that because the hearsay statements made by M.H. to the two witnesses called by Petitioner had already been admitted into evidence, the state was entitled under Rule 806 to attack the credibility of M.H. by presenting Deputy Navara's testimony regarding the inconsistent statements that M.H. had made to him.  See United States v. Wuagneux, 683 F.2d 1343 (11th Cir.1982), cert. den. 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983) (after a hearsay statement was admitted under Rule 804(b)(3), it was proper under Rule 806 to establish a prior inconsistent statement of the hearsay declarant on rebuttal); see also U.S. v. Trzaska, 111 F.3d 1019, 1024 (2d. Cir. 1997) (under Fed.R.Evid. 806, a hearsay declarant may be impeached by showing that the declarant made inconsistent statements); U.S. v. Moody, 903 F.2d 321, 329 (5th Cir. 1990) (impeachment of out-of-court declarants may be accomplished by testimony of prior inconsistent statements).

Nevertheless, Petitioner claims that the admission of M.H.'s statement to Deputy Navara deprived him of his Sixth Amendment right to confront and cross-examine M.H. under the Supreme Court's holding in Crawford v. Washington, supra.  Petitioner also argues that the Deputy Navara's testimony went beyond rebutting M.H.'s statements and instead, served to corroborate the substance of the testimony of the state's trial witnesses.  In opposition, Respondent contends that because the statements of M.H. were not offered as proof of the truth of the matter asserted, but instead was offered to impeach the statements of a witness, the Confrontation Clause is not implicated in this case.

10

In Crawford, the Supreme Court held that the Confrontation Clause prohibits the admission of an out-of-court testimonial statement unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness. 541 U.S. at 59. While the Court in Crawford declined to define "testimonial", it did note that interrogations by law enforcement officers fall within the class of testimonial hearsay. Id. at 53. See also Davis v. Washington, 126 S.Ct. 2266, 2273-2274 (2006) (statements are testimonial when made in the course of police interrogation where the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution). Clearly, Deputy Navara's interview of M.H. was an interrogation by a law enforcement officer, and consequently, M.H.'s statements are testimonial in nature.

However, the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." Crawford, 541 U.S. at 59, n.9 (citing Tennessee v. Street, 471 U.S. 409, 414, 105 S.Ct. 2078 (1985); see also U.S. v. Harris, 200 Fed.Appx. 472, 488 (6th Cir. 2006) (quoting U.S. v. Pugh, 405 F.3d 390, 399 (6th Cir.2005) (citation omitted)) ("The admission of a testimonial statement in and of itself is not enough to trigger a violation of the Confrontation Clause. Instead, the statement must be used as hearsay.").

The Supreme Court's holding in Street is particularly instructive in this case. In Street, the defendant testified at trial that his confession had been coerced by the interrogating officer, who had read to the defendant his accomplice's confession and directed him to "say the same thing." 471 U.S. at 411. In rebuttal, the state called the Sheriff to testify—he denied the defendant's story and read the accomplice's confession

to the jury. Id. The Supreme Court found that the accomplice's confession had not been introduced to prove what happened at the murder scene, but instead had been introduced to rebut the defendant's claim that his confession had been coerced. Id. at 413. The Court concluded that "the state introduced [the accomplice's] confession for the legitimate, nonhearsay purpose of rebutting respondent's testimony that his own confession was coerced" and found the testimony consistent with the Confrontation Clause. Id. at 417. See also Adams v. Holland, 168 Fed.Appx. 17 (6th Cir. 2005) (finding that a co-defendant's statement admitted via the testimony of a police officer did not violate the Confrontation Clause because it was admitted for the non-hearsay purpose of impeachment); U.S. v. Taylor, 328 F.Supp.2d 915 (N.D. Ind. 2004) (rights under the Confrontation Clause would not be violated by permitting introduction of a co-defendant's confession because it would be used for the non-hearsay purpose of impeaching co-defendant's testimony).

Like the Supreme Court in Street, and the Minnesota Court of Appeals, this Court finds that M.H.'s statements to Deputy Navara were not hearsay because they were not offered to prove the truth of the matter asserted. Rather, M.H.'s statements to Deputy Navara were offered in rebuttal for impeachment purposes to establish the inconsistency of her statements to Petitioner's two witnesses that she had falsely accused Petitioner of sexually assaulting her. Contrary to what Petitioner's two witnesses had testified that M.H. had said to them, the substance of Deputy Navara's testimony was that M.H. had never accused Petitioner of raping or prostituting her. Because M.H.'s statement to Deputy Navara is not hearsay, it is not within the purview of Crawford, and its admission did not offend the Confrontation Clause. See U.S. v.

Tolliver, 454 F.3d 660, 666 (7th Cir. 2006) ("a crucial aspect of Crawford is that it only covers hearsay") (citation omitted); see also Barrett v. Acevedo, 169 F.3d 1155 (8th Cir. 1999) ("[a] statement that is not hearsay raises no Confrontation Clause concerns").

Petitioner further asserts that Deputy Navara's testimony regarding M.H.'s statements was offered as substantive evidence, rather than solely for impeachment. Reply to Answer, p. 2. Specifically, Petitioner argues that Deputy Navara's testimony about what M.H. told him in the November 2002 interview also served to corroborate the testimony of X.L., T.T. and P.H. In support of this contention, Petitioner cited to that portion of the transcript that includes Deputy Navara's testimony regarding M.H.'s statements about a black SUV, Petitioner having a long black gun, and the girls being prostituted to pay for crystal methamphetamine. Id. at pp. 2-3; Petitioner's Brief to Minnesota Court of Appeals (citing TIV.16-22).

The record does not support Petitioner's contention that M.H.'s statements about the black SUV, gun and prostitution were offered for substantive purposes. To the contrary, the stated purpose of Deputy Navara's testimony was to rehabilitate M.H.'s credibility by showing that what she had said in her interview was corroborated by other evidence in the case. See Respondent's Brief to the Minnesota Court of Appeals, p. 21 (citing TIII.12). It is important to remember that it was Petitioner's contention that he had not prostituted X.L. or raped P.H., but rather they and T.T. had been directed by M.H. to falsely accuse him of prostitution and criminal sexual assault in order to get him out of the way. To support this contention, Petitioner called two witnesses who testified that M.H. had falsely accused Petitioner of raping and prostituting her in order to protect her boyfriend. In order to undermine this testimony, Respondent called Deputy Navara

13

to testify that while M.H. had denied that Petitioner had raped or prostituted her, she did make other factual statements that were consistent with the statements of P.H. and X.L. regarding the black SUV, Petitioner having a long black gun, and the girls being prostituted by Petitioner and others to pay for crystal methamphetamine. As Respondent argued to the Minnesota Supreme Court, the point of these additional statements by M.H., "because they were corroborated by other witnesses and direct testimony in the case, [was] to cast doubt on M.H.'s alleged recantation of rape." Respondent's Response in Opposition to Petition for Discretionary Review to Minnesota Supreme Court, p. 6.

Further, this Court finds that M.H.'s statements to Deputy Navara about the SUV, the gun and prostitution provided a context for the jury to evaluate Deputy Navara's testimony regarding the inconsistency of M.H.'s statements as to whether she had been sexually assaulted or prostituted by Petitioner. "Statements providing context for other admissible statements are not hearsay because they are not offered for their truth." United States v. Tolliver, 454 F.3d at 666 (citations omitted); See also U.S. v. Jimenez, 419 F.3d 34, 44 (1st Cir. 2005) (where police officers testified to statements made by an unavailable witness, the court found that the challenged statements by the witness were properly admissible, not for their truth, but to provide context to the statements made by the defendant in his written confession and the investigatory steps pursued by the officers). Accordingly, the Court concludes that Deputy Navara's testimony about M.H.'s statements regarding the SUV, the gun and prostitution was not offered or admitted as substantive evidence, but was offered and admitted solely for the purpose of impeachment or to provide a context for the impeaching testimony.

In summary, in light of the evidence in the record and federal law, the conclusions of the trial court and the appellate court that Deputy Navara's testimony regarding M.H.'s statements was admissible to impeach M.H.'s credibility are neither contrary to or a misapplication of federal law, nor an unreasonable determination of the facts presented in the state court proceeding. For all of these reasons, this Court recommends that the petition for writ of habeas corpus be denied with prejudice.

### III.   RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 [Docket No. 1] be **DENIED** and this action be **DISMISSED WITH PREJUDICE**.


Dated:      February 14, 2007

*s/ Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge



Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before March 5, 2007.